**Harold and Sheila Bigelow (Randy Olley, Appellee) v. Carolyn Bigelow (Marvin Wolf, Appellant)**

[759 A.2d 67]

No. 99-116

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed June 16, 2000

Motion for Reargument Denied July 19, 2000

---

*A. Jeffry Taylor* of *Abatiell & Valerio,* Rutland, for Appellee Olley.

*Marvin Wolf,* White River Junction, Appellant.

**Skoglund, J.** Appellant Marvin Wolf appeals from a family court order imposing sanctions of attorney's fees and expenses, totaling $3610, payable to appellee Randy Olley, Ph.D., and a further fine of $2500, payable to the court, for violations of V.R.C.P. 26(g). Appellant contends: (1) the court failed to provide proper notice that sanctions would be imposed under Rule 26; (2) the evidence failed to support an award of sanctions; (3) the sanctions awarded were excessive; and (4) the court abused its discretion in awarding sanctions after its recusal from the case. We affirm that portion of the order awarding the remedial sanction of attorney's fees and expenses, and reverse that portion imposing the punitive sanction of $2500.

A full recitation of the procedural history is necessary to appreciate the tortured and convoluted road this case has traveled. It originated as two petitions filed by Harold and Sheila Bigelow requesting

emergency relief from abuse on behalf of their two grandchildren against their daughter, the children's mother. By order dated January 23, 1997, the court ordered a psychiatric evaluation of mother by Otto Marx, M.D. The order provided that the results of the examination, including reports or other documents in connection therewith, should be made available to counsel for plaintiffs, counsel for defendant mother, counsel for the minor children, and the guardian ad litem. As part of the psychiatric evaluation, a psychologist, Randy Olley, performed psychological testing of mother.

Following a hearing in June 1997, the court issued a final relief-from-abuse order, awarding grandparents temporary custody of the minors. All of the parties were represented by counsel at the hearing except mother, who appeared pro se. Thereafter, mother obtained counsel, appellant, who filed a motion under V.R.C.P. 60(b) to vacate the order. The court denied the motion, and mother appealed.[1] Coinciding with the appeal, the grandparents filed a guardianship petition in the probate court, which, in January of 1998, was transferred to the family court and merged with the abuse docket.

In December 1997, while the appeal was pending, appellant wrote to Olley requesting copies of her testing data, notes, and all other documents in her files pertaining to mother, and enclosed a medical release signed by mother. Olley's attorney, Jeffry Taylor, wrote back and reported that his client declined to supply the material requested because Olley had performed only a forensic evaluation, rather than treatment, and therefore mother was not a patient entitled to the materials. Appellant responded with a motion to compel Olley to produce the requested records. Attorney Taylor filed an opposition, arguing that mother's letter and subsequent motion to compel had no basis in law, and suggesting that appropriate discovery procedures be utilized.

Appellant's response to the opposition characterized Olley's position that mother was not a patient as "ludicrous," argued that Olley and Dr. Marx were "indispensable parties" who could be joined in the action, ridiculed the "supposed mental health experts [who] are busy playing symantical (sic) games," and asserted that Olley's position "reeks of bias and un-professionalism." Attorney Taylor responded

---

[1] On appeal we concluded that the family court lacked jurisdiction because the grandparents did not have standing as third parties under the Abuse Prevention Act, and therefore vacated the final relief-from-abuse order and remanded the case for further proceedings. See *Bigelow v. Bigelow*, 168 Vt. 618, 620, 721 A.2d 98, 100 (1998) (mem.). That decision has no bearing on the issues presented in this appeal.

with a motion for sanctions under V.R.C.P. 11(b),[2] arguing that the motion to compel had no legal basis, that the allegation that Olley and Marx could be joined as parties was frivolous and unsupported by existing law, and that the personal attacks against Olley and her attorney were reckless and unwarranted. Appellant responded, describing Attorney Taylor's motion as "vexatious and inane." Attorney Taylor filed a supplemental memorandum in support of the motion for sanctions, again claiming that the legal and factual allegations in the response to the opposition were frivolous, reckless, unsupported by law, and "blind, personal attacks" warranting sanctions under Rule 11. Appellant filed a supplemental response in which he declined to "bore the Court with the all too easy attacks that it could launch against Mr. Taylor and this insidious motion for sanction" but noted that, as the request for documentation from Olley was a discovery request, Rule 11 was inapplicable. See V.R.C.P. 11(d) (making subdivisions (a) through (c) of the rule inapplicable to "discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37").[3] One day later, attorney Taylor filed a

---

[2] V.R.C.P. 11(b) provides, in part, that in presenting a pleading, motion, or other paper to the court, an attorney or unrepresented party is certifying

> that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

V.R.C.P. 11(c)(2) provides that a court may impose sanctions limited

> to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. . . . [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.

[3] V.R.C.P. 26(g) provides, in part, that every request for discovery or response or objection thereto must be signed by an attorney or unrepresented party, and that the signature

> constitutes a certification that the signer has read the request, response, or objection, and that to the best of the signer's knowledge, information, and

supplemental memorandum arguing that appellant's motions, "unique though they may be," were not founded on discovery rules and therefore were subject to Rule 11.

In March 1998, the court held a hearing on the motion to compel and the motion for sanctions. The court questioned counsel at the threshold as to whether Rule 11 or Rule 26 applied and whether it mattered, observing that "whether you had chosen [Rule] 11 or [Rule] 26, we were kind of coming to the same issues." The court then strongly admonished appellant for the tone of his pleadings, explaining that there was no place for such language in court, and that he would not tolerate "repeated filings of pleadings that really get down to name-calling." The court indicated that appellant's "lack of civility is going to be punished." The court also observed that the materials sought by appellant were discoverable through proper discovery procedures and urged appellant to channel his efforts in that direction. The court thus denied the motion to compel and granted the motion for sanctions. The court reserved ruling on the amount of sanctions to be imposed, but stated that they would not be "anything Draconian."

Appellant subsequently served a request to produce on Olley, which triggered a new round of responses and counter-responses. Appellant also filed a motion to reconsider the decision granting sanctions. Attorney Taylor responded with a motion for monetary sanctions, requesting that appellant be ordered to pay some or all of the

---

belief formed after a reasonable inquiry it is: (1) consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; (2) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; and (3) not unreasonable or unduly burdensome or expensive, given the needs of the case, the discovery already had in the case, the amount in controversy, and the importance of the issues at stake in the litigation. . . . .

If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

V.R.C.P. 37 allows a court to impose sanctions in a variety of discovery-related circumstances, including the granting or denial of a motion to compel, *id.* 37(a)(4), failure to comply with an order to provide or permit discovery, *id.* 37(b), failure to admit, *id.* 37(c), failure to appear at a deposition, to serve answers or objections to interrogatories, or to serve responses to a request for production or inspection, *id.* 37(d), and failure to participate in the framing of a discovery plan. *Id.* 37(e).

reasonable attorney's fees and expenses incurred as a result of the Rule 11 violation.

On August 26, 1998, the court issued its opinion and order regarding sanctions. The court determined that Rules 26 and 37, rather than Rule 11, governed. The court further found that there was no legal basis for either the motion to compel or for the assertion that Olley and Dr. Marx could be joined as parties; and that appellant had engaged in personal attacks and name-calling intended to harass Olley and her attorney. The court thus concluded that appellant had violated Rule 26(g) by signing the pleading, thereby certifying falsely that it was "warranted by existing law" and "not interposed for any improper purpose, such as to harass." V.R.C.P. 26(g). The court imposed two sanctions against appellant, ordering him to reimburse Olley for attorney's fees and expenses, and to pay the Rutland Family Court the sum of $2500 "as an appropriate sanction for his egregious violations of Rule 26(g) of the Vermont Rules of Civil Procedure." Attorney Taylor subsequently submitted a statement of attorney's fees and expenses, and the court ordered appellant to pay Olley a total of $3610.

In September, appellant moved to reconsider the order on sanctions, which led in turn to new charges of misconduct by Attorney Taylor based upon allegations that appellant had fabricated and misrepresented the law. In January 1999, the court issued a decision denying the motion for reconsideration, and ordering appellant to show cause why he should not be held in contempt for failure to pay the $2500 sanction, and for further misrepresentations contained in the reconsideration motion. In February, appellant filed a notice of appeal from the court's denial of the motion for reconsideration. We subsequently stayed execution of the order imposing sanctions and the order to show cause pending resolution of the appeal.[4]

Appellant first contends the court abused its discretion and violated his due process rights by awarding sanctions under V.R.C.P. 26(g) notwithstanding the fact that the motion for sanctions was predicated on V.R.C.P. 11. We note at the outset that appellant was clearly entitled to avail himself of the traditional discovery procedures. Rules 4 and 9 of the Family Court Rules make clear that the Rules of Civil

---

[4] Our order, dated March 24, 1999, also denied appellee's motion to dismiss, which had argued that the appeal was untimely, and that appellant had failed to preserve for review the underlying sanctions imposed in the court's order of August 26, 1998. For the reasons stated in our order, we reject identical assertions raised in appellee's brief on appeal.

Procedure apply to actions for abuse prevention, which is how this matter started, and to family court proceedings in general. See V.R.F.P. 4(a) & (g), 9(a)(1). Thus, when a mental evaluation is ordered pursuant to V.R.F.P. 5, as occurred here, the Rules of Civil Procedure govern. See V.R.F.P. 5(a). The rules assume that copies of an examiner's report, including the results of all tests made, diagnoses and conclusions, will be available from the requester of the examination. See V.R.C.P. 35(b)(1). The rules also provide that the subdivision does not preclude discovery of a report of an examiner or the taking of a deposition of the examiner in accordance with the provisions of any other rule. See *id.* 35(b)(3). Thus, V.R.C.P. 30 (depositions) or 34 (production of documents) could have been utilized to obtain access to the documents which appellant sought. We note, as well, that the order for psychiatric evaluation provided that the results would be made available to counsel for the parties. Therefore, appellant could have served a proper request for production and, if unsuccessful, could then have sought relief pursuant to VR.C.P. 37.

■ ■ Although appellant did not properly avail himself of these established discovery procedures, we agree with the trial court that appellant's efforts to obtain the materials from Olley were in the nature of discovery requests. Therefore, the sanctions motion was properly governed by V.R.C.P. 26 and 37. See V.R.C.P. 11(d) (Rule 11 sanctions "do not apply to discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37"). Violation of Rule 26(g) was not, however, specifically alleged or noticed by Attorney Taylor or the court, although the latter did consider its applicability at the hearing. Nevertheless, we are not persuaded that appellant was prejudiced by the omission. Both Rule 11 and Rule 26 treat signed papers as certifying that the pleading is not offered for any improper purpose, such as to harass, that the claims and contentions therein have a basis in existing law, and that the contentions have evidentiary support. Thus, actions that violate Rule 11(b) also violate the provisions of Rule 26(g), and sanctions imposed pursuant to either rule are reviewed under identical abuse of discretion standards. See, e.g., *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991) (courts apply Rule 11 standards and case law to Rule 26(g)); *Apex Oil Co. v. Belcher Co. of New York, Inc.*, 855 F.2d 1009, 1015 (2d Cir. 1988) (in interpreting and applying Rule 26(g), courts look to case law and standards under Rule 11); *Estate of Miles v. Miles*, 994 P.2d 1139, 1146 (Mont. 2000) (since Rule 26(g) contains same language as Rule 11 to the effect that pleading or discovery

request or objection may not be "interposed for any improper purpose," same standard of review applies); see also *Jerome v. Pardis*, 783 P.2d 919, 922-23 (Mont. 1989) (although trial court erred in imposing sanction under Rule 37(b) in the absence of a prior discovery order, sanction would be affirmed under Rule 26(g)). Accordingly, we find no prejudicial error resulting from the court's imposition of sanctions under Rule 26(g) for the actions alleged, notwithstanding the fact that the evidence and argument to the court at the hearing on the motion for sanctions was offered in the erroneous belief that the procedure was governed by Rule 11.

Appellant next asserts that the evidence failed to demonstrate a violation of Rule 26. The claim is without merit. As noted, the trial court found that appellant's motion to compel was without support in existing law, as was the threat to join Olley and Dr. Marx as parties to the litigation, and that the language and tone of appellant's response to attorney Taylor's opposition was unwarranted and intended to harass. The law and the record evidence fully support these findings. See *Bissonnette v. Wylie*, 166 Vt. 364, 370, 693 A.2d 1050, 1055 (1997) (trial court findings will not be set aside unless, viewing evidence in light most favorable to prevailing party, they are clearly erroneous). Rule 26(g), like Rule 11, requires an attorney who signs a discovery request, response, or objection to make a reasonable inquiry into the factual and legal bases of the statements contained therein. See *Byrd*, 927 F.2d at 1137; *State v. Delaney*, 157 Vt. 247, 256, 598 A.2d 138, 143 (1991); *Clipse v. State*, 808 P.2d 777, 779 (Wash. Ct. App. 1991). There was no credible legal basis for the motion to compel, as there was no properly filed discovery request pending, nor was there any legal basis or authority for joining the medical examiners as parties to the underlying litigation.[5] Appellant's certifications of the motion and response, therefore, violated Rule 26(g).

As for the intemperate language in appellant's response to attorney Taylor's opposition, the record amply supports the court's finding that it was unprofessional, uncivil, and intended solely to harass and embarrass the opposing counsel and party. Accordingly,

---

[5] The trial court may have erred in concluding that the motion to compel was without a legal basis due to the pending appeal, as the guardianship petition was still before the family court. Nevertheless, as noted above, its conclusion that the motion lacked a legal basis was sound. See *Putter v. Montpelier Pub. School Sys.*, 166 Vt. 463, 471, 697 A.2d 354, 359 (1997) (this Court may affirm correct judgment even though grounds stated in support of it are erroneous).

we discern no error in the court's conclusion that appellant violated V.R.C.P. 26(g).

Appellant also contends that the sanctions awarded were excessive and an abuse of discretion. Rule 26(g) provides that the court may impose "an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." As noted, we review a court's award of sanctions under Rule 26(g) by the same abuse of discretion standard that governs Rule 11. See *Byrd*, 927 F.2d at 1137; see also *Gilbert v. Gilbert*, 163 Vt. 549, 561, 664 A.2d 239, 245 (1995) (we will not reverse Rule 11 sanctions absent abuse of discretion). The order requiring appellant to pay Olley's attorney's fees and costs was clearly reasonable. A contributing psychologist to a court-ordered examination should not have to bear the costs of an attorney to defend against improperly framed and personally abusive discovery requests. This is particularly true where attorney Taylor had attempted to direct appellant to proper discovery channels to pursue the request for production of documents in Olley's possession. Accordingly, we find no abuse of discretion in the sanction consisting of attorney's fees and costs to compensate Olley for these unwarranted expenses.

The $2500 penalty payable to the court presents another matter. Unlike Rule 11, Rule 26(g) does not expressly authorize sanctions payable to the court. See V.R.C.P. 11(c)(2) (sanctions under Rule 11 may include "an order to pay a penalty into court"). Rule 26(g) does, however, broadly authorize the court to impose "an appropriate sanction," and federal courts have recognized that this may include a penalty payable to the court. See, e.g., *United States v. Shaffer Equip. Co.*, 158 F.R.D. 80, 87 (S.D.W. Va. 1994) (Rule 26 "permit[s] the imposition of a . . . fine, paid to the court and not to the opposing party"). At the same time, however, a number of courts have held that the imposition of such noncompensatory fines for abuse of the discovery process are punitive in nature and therefore require enhanced due process protections, including specific notice of the possibility of nonremedial sanctions, the opportunity to respond to such fines, and other procedural safeguards. See, e.g., *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129 (2d Cir. 1998); *Law v. National Collegiate Athletic Ass'n*, 134 F.3d 1438, 1443-44 (10th Cir. 1998); *Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 5-6 (2d Cir. 1996). As this Court has also observed, "'an attorney is entitled at least to a meaningful opportunity to argue,

either in open court or on paper, against the imposition of any such sanctions against him.'" *Van Eps v. Johnston*, 150 Vt. 324, 328, 553 A.2d 1089, 1092 (1988) (quoting *Brady v. Fireman's Fund Ins. Co.*, 484 A.2d 566, 569 (D.C. 1984)).

■ Attorney Taylor's motion for sanctions specified that he was seeking only reasonable expenses, including attorney's fees and costs, and the trial court gave no indication at the hearing that it intended to impose a punitive fine over and above reasonable attorney's fees and expenses. Indeed, the court affirmatively indicated that the sanction would not be severe. Accordingly, we conclude that the $2500 fine cannot stand.

Finally, appellant contends the court erred in deciding the sanctions issue after recusing itself from participation in the underlying family court proceedings. The hearing on the motion for sanctions was held in March 1998. The record indicates that the court recused itself sua sponte sometime in July from further participation in the underlying family court proceedings, but continued to handle the sanctions matter, issuing its written decision in August 1998, denying a motion for reconsideration in January 1999, and scheduling a further hearing for April 1999.

■ Although the court's continued handling of the motion for sanctions following its voluntary recusal from the underlying family court proceedings raises some concerns, we are not persuaded that it warrants reversal of the judgment. Appellant cites nothing in the Code of Judicial Conduct or any other authority requiring the court to recuse itself from deciding the sanctions motion. Moreover, appellant never moved to disqualify the court at any point in the discovery and sanctions proceedings. Absent any showing to the contrary, therefore, we must assume that the court's recusal was unrelated to the motion for sanctions, and that its continued handling of the matter was unaffected by the recusal. See *In re T.L.S.*, 144 Vt. 536, 542, 481 A.2d 1037, 1040 (1984) (when judicial partiality is claimed, such prejudice must be affirmatively shown by the party seeking recusal).

*That portion of the judgment imposing the remedial sanction of attorney's fees and expenses is affirmed. That portion of the judgment imposing the punitive sanction of $2500 is reversed.*