### Katherine, Bradley and Jordan LAWSON v. BROWN'S DAY CARE CENTER, INC., et al.

[776 A.2d 390]

No. 98-447

April 16, 2001. Duncan Kilmartin, a counsel for defendants in this case, appeals the Caledonia Superior Court's order imposing a $2,000 sanction on him for filing unsealed information from a confidential mediation session with the court. He claims the court did not afford him procedural due process and erred because his professional responsibilities required him to make the disclosure. We reverse and remand for a determination on the issue of Kilmartin's motivation in making the disclosure.

In September 1997, plaintiffs Katherine and Bradley Lawson, represented by attorney Gareth Caldbeck, filed the underlying civil action to recover damages for injuries to their daughter Jordan Lawson, who choked on a rattle while at Brown's Day Care Center. The Cooperative Insurance Company retained Kilmartin to represent defendants. Defendants also retained separate counsel due to the prospect of an award in excess of their insurance coverage. After the case settled, the superior court sanctioned Kilmartin $2,000 and Caldbeck $1,000. Kilmartin appeals; Caldbeck does not appeal the sanction.

This case proceeded in an atmosphere of unbecoming hostility between Kilmartin and Caldbeck, expressed in numerous filings with the court. The wrangling escalated to the point where, in April 1998, the court commanded, "in filings with the court, the attorneys shall refrain from the use of rhetoric containing personal criticism." Nevertheless, as the court later noted, "Unfortunately, the filings of such documents did not stop." For example, on June 18, 1998, Kilmartin filed an "emergency" motion to disqualify Caldbeck on the basis of obstruction of justice, subornation of perjury, and presentation of false evidence. Kilmartin based the motion on the belief that Caldbeck had submitted false affidavits in the case. The court denied the June 18 motion, stating that the "factual discrepancies described in the [m]otion are not unusual ones to occur in discovery, and the court will not rule on an *ex parte* basis that they constitute a reason to halt a planned discovery process or an early neutral evaluation of the case."

Under a pretrial scheduling order, the court instructed the parties to engage in mediation with attorney Peter Joslin. The parties and their respective counsel met with Joslin on June 22, 1998, at which time the parties agreed that all mediation proceedings were to remain confidential.

On June 26, 1998, Kilmartin filed with the court an unsealed document entitled "Confidential Disclosure under DR 1-103(A)," disclosing discussions that took place during the mediation session and attaching a copy of a proposed settlement agreement. Disciplinary Rule 1-103(A) of Vermont's Code of Professional Respon-

sibility,[1] applicable when Kilmartin made the disclosures, states: "A lawyer possessing unprivileged knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority . . . ." DR 1-102 prohibits a lawyer from engaging in "illegal conduct involving moral turpitude," *id.* 1-102(A)(3); engaging in conduct involving "dishonesty, fraud, deceit, or misrepresentation," *id.* 1-102(A)(4); or engaging in conduct that is "prejudicial to the administration of justice," *id.* 1-102(A)(5).

Kilmartin asserted that Caldbeck had committed (1) a violation of 13 V.S.A. § 8 when, during the mediation, he proposed settlement terms under which defendants would refrain from making or authorizing "any claims, complaints or allegations, civil or criminal, against any parties or other persons" arising out of the lawsuit, and (2) a violation of DR 1-102 based on Caldbeck's negotiating demand that Kilmartin forego any criminal or disciplinary complaint against him. Accordingly, he disclosed this perceived transgression, citing DR 1-103(A) which requires attorneys in this state to report misconduct by other attorneys unless the information is privileged.[2] *In re Anderson*, 171 Vt. 632,

---

[1] The Rules of Professional Conduct replaced the Code of Professional Responsibility and apply to lawyer conduct occurring after September 1, 1999.

[2] The information at issue here was not protected by an attorney-client privilege. See *In re Himmel*, 533 N.E.2d 790, 794 (Ill. 1988) (information disclosed to attorney by client in presence of third parties not protected by attorney-client privilege). Moreover, our evidence rules make information disclosed in mediation inadmissible, but not privileged. See V.R.E. 408. The parties could not create an evidentiary privilege by agreement. Even if they could, it would be a large stretch to interpret an informal oral agreement

769 A.2d 1282 (2000) (mem.). After reading the cover and title pages accompanying the disclosure, the court returned the disclosure (unread) to Kilmartin, explaining in a notation written on the cover page that it would "not participate in ex parte communications concerning the case."

On July 2, Kilmartin filed a motion seeking permission to appeal the denial of his June 18 motion or, in the alternative, to disqualify Caldbeck. This motion included the June 26 mediation disclosure. Caldbeck's response, filed on July 6, also described statements made during mediation, but requested that the court seal Kilmartin's motion. Thus began an exchange of several filings between the parties that disclosed more information pertaining to the confidential mediation. The court ordered the temporary seal of certain pages of these documents on three separate occasions, making clear that its reason for doing so was to protect the confidentiality of the parties' mediation and settlement discussions. On August 24, the court released the record from temporary seal, except for a portion of the draft settlement proposal regarding the settlement amount that is now permanently sealed. The court then ordered Kilmartin and Caldbeck to "appear and show cause why the court should not impose sanctions for violating the confidentiality of the mediation session by filing documents with the court containing descriptions of discussions at the mediation session and

---

as creating an evidentiary privilege that insulates a party to a mediation from the consequences of criminal or ethical misconduct. The duty of disclosure is even broader under the Rules of Professional Conduct. Rule 8.3(c) requires disclosure unless the information is covered by the lawyer confidentiality rule, Rule 1.6. There is no exception for mediation proceedings even where mediation is covered by an evidentiary privilege.

related negotiations and proposed terms of settlement."

The superior court sanction decision, delivered orally on the record shortly after the close of the September 2 hearing, shows that the court imposed the sanction for the following reasons:

> 1. The lawyers entered into a "verbal agreement that what took place at the mediation session was confidential."
>
> 2. The session took place pursuant to an order of the court so the attorneys made their promise "in connection with court business" and their "obligations ran not just to the parties themselves, but to the court and the court processes."
>
> 3. The attorneys had no reasonable expectation that they could file documents with the court and have them sealed.
>
> 4. Although there may be exceptions to confidentiality, the material disclosed "is precisely the kind of material" subject to confidentiality.

The trial court reasoned that the agreement of confidentiality, entered into by all parties, coupled with the fact that mediation occurred under a court order justified the sanctions. The court stated that it was "dealing with a situation where this was a session required by the court, conducted by a person appointed by the court who did obtain the agreement for confidentiality by all present, including the attorneys."

Nevertheless, it is important to recognize what is not part of the court's decision. There is no finding that Kilmartin made the filings for an improper purpose or in bad faith. Indeed, there is no finding that Kilmartin did not make the filing for exactly the purpose he stated: to disclose unethical conduct and/or potentially criminal conduct and to disqualify the opposing lawyer.

Although the decision does talk of expectations as to sealing, there is no indication that it would not be equally applicable to a complaint to the Professional Conduct Board or a complaint to the state's attorney. The rationale clearly covers disclosure to anyone not part of the mediation. The unstated assumption behind the decision of the court is that an attorney in Kilmartin's position could never disclose anything that occurred in the mediation for any reason. The court's order is broad enough to make a person who commits professional misconduct, even criminal misconduct, during a mediation immune from disciplinary sanction or prosecution because no one can lawfully disclose the misconduct.

Although we have held that a court may sanction attorneys for misconduct through its inherent powers, *Van Eps v. Johnston*, 150 Vt. 324, 326-27, 553 A.2d 1089, 1091-92 (1988), here the court found no exceptional circumstances and did not find that Kilmartin acted in bad faith. A finding of bad faith is essential to the court's power to impose the sanction it did. See *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (a finding of bad faith must proceed any sanction based upon the court's inherent powers). Kilmartin is entitled to some explanation why the reasons for the disclosure were not only wrong, but so wrong that they were advanced in bad faith. The United States Supreme Court has observed that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Id.* at 764. We reiterated that point in *In re Sherman Hollow, Inc.*, 160 Vt. 627, 630, 641 A.2d 753, 756 (1993) (mem.) ("sound discretion and restraint must be used when relying on . . . inherent powers" to discipline a lawyer).

Even if we could accept the court's broad rationale for the sanctions it imposed, we are still faced with Kilmartin's argument that he is entitled to notice that his conduct was improper.

See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53-54 (1991) (sanction under inherent powers serves the same function as contempt); *In re Paschal*, 77 U.S. (10 Wall.) 483, 491 (1870) (a proceeding seeking sanctions for attorney misconduct is "in the nature of a proceeding as for a contempt"); *State v. Pownal Tanning Co.*, 142 Vt. 601, 605, 459 A.2d 989, 991 (1983) (party cannot be held in contempt for violating court order unless order is "specific and definite so that it leaves no reasonable basis for doubt as to its meaning"). Although we recognize that Kilmartin had notice of the hearing and an opportunity to be heard, see *Rich v. Montpelier Supervisory Dist.*, 167 Vt. 415, 420, 709 A.2d 501, 504 (1998), our concern is whether he had notice that the conduct he engaged in could subject him to sanction. Although the superior court indicated that it would not disqualify Caldbeck as sought by Kilmartin, it never stated his conduct in seeking Caldbeck's disqualification was improper until its decision imposing sanctions. Thus, the rationale for the sanctions depends upon the court's conclusion that Kilmartin knew he was violating his obligation of confidentiality, even in the face of Kilmartin's assertion that the Code imposed upon him an obligation of disclosure. We find it difficult to conclude that Kilmartin had fair warning of the obligation he is charged with violating, when he consistently asserted that he had the opposite obligation and the court never addressed his position.[3] As recent commentators on the ethical obligations of lawyers in mediation observed, "[p]eople understand confidentiality to mean different things, from totally secret and never to be mentioned anywhere or to anyone, to a protection only from future court actions, that allows disclosure in other circumstances." F. Furlan, et al., *Ethical Guidelines for Attorney-Mediators: Are Attorneys Bound by Ethical Codes for Lawyers When Acting as Mediators?*, 14 J. Am. Acad. Matrim. Law 267, 305 (1997).

In this regard, it is important to note that the sanction imposed upon Kilmartin is essentially punitive-it will go to the State of Vermont and not to a litigant. Indeed, the superior court called the sanction a "fine." In the recent case of *Bigelow v. Bigelow*, 171 Vt. 100, 108-09, 759 A.2d 67, 72-73 (2000), we found that special due process concerns are raised when the court orders a monetary penalty payable to the court. Thus, the attorney to be sanctioned is entitled to "specific notice of the possibility of nonremedial sanctions, the opportunity to respond to such fines, and other procedural safeguards." *Id.* at 108, 759 A.2d at 72 (citing *Mackler Prods., Inc. v. Cohen*, 146 F.3d 126, 129 (2d Cir. 1998), *Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1443-44 (10th Cir. 1998), and *Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.*, 101 F.3d 3, 5-6 (2d Cir. 1996)). Both *Mackler Prods., Inc.*, 146 F.3d at 130, and *Law*, 134 F.3d at 1443, held that a substantial fine could be imposed only through the procedures applicable to a criminal proceeding because the adjudication was fundamentally indistinguishable from criminal contempt. Moreover, we reversed in *Bigelow* because the attorney was not informed that he could be subject to a punitive sanction. 171 Vt. at 109, 759 A.2d at 73. The identical circumstances are present here and only heighten concerns that Kilmartin did not have fair warning of the possible consequences of his actions. We conclude, however, that the lack of fair warning would have been addressed by a finding of bad faith. If the court

---

[3] Not only did the court ignore Kilmartin's assertion that he was discharging his obligation under DR 1-103(A) when he filed the documents that led to the sanction, it ignored Kilmartin's position in rendering the sanction decision.

found that Kilmartin acted in bad faith in making the disclosures, there would be no violation of his due process rights because attorneys in this state are on notice that negotiating in bad faith during settlement negotiations can result in sanctions. See *Van Eps*, 150 Vt. at 327, 553 A.2d at 1091.

Although Caldbeck claimed that Kilmartin filed the mediation material primarily to try the underlying action in the press, we express no opinion on whether Kilmartin acted from improper motives; we leave that to the trial court on remand. We decide only that it was error for the court to have imposed sanctions without finding any improper motives or bad faith and ignoring Kilmartin's justification for making the filing, a justification that is valid on its face. On remand, if the court finds that Kilmartin revealed the mediation materials in bad faith, then a sanction would be an appropriate exercise of the court's inherent powers.

*Reversed and remanded.*